### Francis H. Darling vs. Jacob Stanwood.

If a commission merchant is employed here to buy goods in a distant market, and the custom of that market is for commission merchants to employ brokers to make such purchases, and this custom is understood by the principal, the commission merchant may properly employ a broker of experience and good reputation to make the purchases; and if he does so he will not be liable for such broker's errors or misconduct.

For the purpose of showing that certain cotton sent by steamer from New Orleans to Boston had been wet with rain, evidence is not competent to show that other cotton brought from New Orleans to Boston by other steamers at about that time was wet with rain.

Contract brought to recover the balance of an account for moneys expended and commissions charged in purchasing cotton for the defendant. The answer alleged that the plaintiff did not exercise proper care and skill in buying and managing the cotton, whereby the defendant sustained great loss.

At the trial in the superior court, before *Ames*, J., the plaintiff testified that he did business in New Orleans, but spent the summers here; and that, while in Boston in August 1865, he received an order from the defendant to purchase six hundred bales of cotton on his account, and did so; and that he forwarded the cotton by sea to Boston. It appeared that one cargo, by the steamer Aries, arrived more or less damaged. The parties agreed on two experienced persons to examine it, and their report was used at the trial, as well as their testimony. One of

Darling *v*. Stanwood.

those persons testified that a portion of the cotton was injured by " country-damage " — a damage sustained before shipment to New Orleans — and a portion by salt water or " sea damage;" and that the whole of it appeared to have been wet with rain. On cross-examination, the plaintiff, against the defendant's objection, was permitted to ask whether the cotton that arrived by steamers from New Orleans at about that time did not appear generally to have been wet with rain; to which he answered that he received cotton himself by several different steamers about that time, and it was generally, or all of it, wet with rain. And the plaintiff was afterwards allowed to obtain a similar statement by interrogatories to one of his own witnesses; it having a tendency, in the opinion of the court, to confirm the testimony of witnesses as to the state of the weather in New Orleans at the time of the shipment of the cotton. It was not controverted that the plaintiff bought the quantity and at the price charged in his account, and the only controversy was as to the quality and condition of the cotton, and the degree of care and skill furnished by plaintiff in purchasing, managing and forwarding the same.

The plaintiff was permitted to show, against the defendant's objection, that it was a general, established and well understood usage of the cotton trade at New Orleans for a commission merchant, on receiving an order to purchase cotton for Northern account, to employ a cotton broker; that the plaintiff, on receiving the defendant's order, communicated by telegraph with Thomas A. Dix, a person in his regular employment, and managing and superintending his business in his absence, who employed Theodore Ausé, a cotton broker in New Orleans, well known and largely experienced in the trade, and every way competent, to fill the order; that the course of business was for the broker to go through the market and get samples, ascertain prices, and report to his employer; and, if the samples were approved and the employer satisfied, the broker then closed the trade, and sent his classer to sample the cotton as delivered, and see that it corresponded with the broker's sample; that the practice was for the weigher, who was employed and paid by the

seller, to make allowance for any damage that was discovered, or to reject what was found to be damaged and unsound; and that the seller was understood to warrant that the cotton was sound at the time of the sale, and, if it should be wet with rain afterwards, it was not an unsoundness that should prevent it from being shipped. There was evidence tending to show that when the cotton was removed from the shed a sudden and very heavy rain came on, and the weather continued to be wet and very unfavorable for a month or more; but witnesses called by the plaintiff denied that the cotton was damaged by the rain. There was also evidence tending to show that it again got wet with rain after being delivered at the levee and put in the charge of the master of the vessel, and also that the vessel had a long and severe passage; but there was no evidence or claim that it got wet by fresh water on the passage.

It appeared that the defendant was a frequent purchaser in and acquainted generally with the usages of the New Orleans market. And there was evidence tending to show that the broker made the purchase in the usual manner, and according to the order communicated.

The judge instructed the jury that, if it was a well understood usage of that market to buy cotton by and through the intervention of a broker, and if the plaintiff employed a competent and suitable broker, and if there were no manifest and palpable defect about the property which the plaintiff or Dix, his immediate agent, saw, or in the exercise of due care ought to have seen, it would be *primâ facie* evidence of ordinary and due care on the plaintiff's part, in the selection and purchase; that after the purchase and before the actual shipment of the cotton he was bound to take reasonable and due care to prevent it from being injured by improper or unnecessary exposure to the weather and the rain, and that it was for the jury to say on all the evidence whether he neglected any proper and reasonable precaution that ought to have been taken for its protection, or did any act which a man of ordinary prudence and carefulness ought to have avoided, under the circumstances.

The jury returned a verdict for the plaintiff, with $3163 damages; and the defendant alleged exceptions.

Darling *v.* Stanwood.

*A. A. Ranney,* for the defendant.

*D. Thaxter,* for the plaintiff.

FOSTER, J.   When the defendant employed the plaintiff to buy cotton on his account in the New Orleans market and to ship it to Boston, he is presumed to have contemplated that the purchases would be made in the ordinary course of such business at that port.   Upon the question whether the plaintiff is liable in damages for negligently or improperly executing such a commission, the evidence of the usages of the cotton trade were clearly admissible, especially as it appears that the defendant himself was well acquainted with them.   The employment of a broker to effect the purchases was a justifiable delegation of authority to a sub-agent, because this manner of transacting business was the usual and known custom of the New Orleans market.   The statement that the seller of the cotton is understood to warrant that the cotton is sound at the time of sale seems to have been a part of the narrative given by the witnesses of the course of the business; and not an attempt to prove by custom a warranty in a case where none would be implied by law.

In a business which requires or justifies the delegation of an agent's authority to a sub-agent, who is not his own servant, the original agent is not liable for the errors or misconduct of the sub-agent if he has used due care in his selection.   The instructions of the presiding judge appear to have been conformable to law, and well adapted to the case disclosed by the bill of exceptions.

But upon the question whether the plaintiff was guilty of negligence in buying cotton which had been wet by rain before it was purchased, or in suffering the cotton to be rained upon while it was in his custody and care, evidence was introduced, as we think improperly, that other cotton which arrived on other steamers about the same time with this lot had been wet by rain. Much better evidence existed of the state of the weather at New Orleans when this cotton was shipped.   The other lots may have been wet before this was purchased, or on the voyage.   It was not competent for the purpose for which it appears to have been allowed to be introduced.

And we cannot say that it was merely immaterial, and not calculated to prejudice the defendant. On the contrary, we think it had a tendency to mislead the jury upon the real issue whether the plaintiff had been guilty of negligence in the execution of his agency. The jury would naturally consider the fact that other cotton arriving about the same time had been rained upon, as a circumstance tending to show that this cotton also was wet by rain without the fault of the plaintiff. For this reason only the exceptions are sustained.